DOUGLASS *vs.* FRAME, O. H. P. KIMBERLY and DAVID KIMBERLY.

In an action on a promissory note made by A. & Co., and seeking to charge B., one of the defendants, as a dormant partner, it is not allowable to show that, at the formation of the firm of A. & Co., they and B. entered into a conspiracy to defraud the creditors of the firm for the purpose of turning the avails of their business into the hands of B.

Whether under the circumstances of this case a dormant partnership was proved, adjudged.

ERROR from superior court. The facts of the case appear in the opinion of the court.

*By the Court,* COWEN, J. This was an action on a promissory note made by Frame & Kimberly, which firm consisted of Thomas L. Frame and Oliver H. P. Kimberly. The object of the action was to charge David Kimberly as a dormant partner. David had been a. member of two previous firms, Kimberly & Co., consisting of David Kimberly, Oliver H. P. Kimberly and Stiles Curtis. This was dissolved in March, 1837, and the firm of David Kimberly & Son formed, consisting of David Kimberly and Oliver H. P. Kimberly. In January, 1838, this firm was dissolved and that of Frame & Kimberly formed at the same time. All the firms did their business at the same place; and their business was of the same kind. On forming the latter firm, they purchased all the effects of the two former, and agreed to pay their debts. June 8th, 1839, they failed and made a general assignment to David Kimberly, to secure him against liabilities on their account, the balance to be applied in paying other debts. O. H. P. Kimberly was a son of David Kimberly, and resided with his father during the transactions in question. The father even after he had sold out to the last firm kept his desk in the store, and was there daily, his family residence being at Brooklyn. The dissolution of the old firms was duly advertised and their signs remained over the door but a short time after the formation of the last firm. The nature of the interest which David Kimberly

retained in the new business, and which drew him so often to the store was explained by the evidence.

When the last firm was formed David Kimberly agreed with it to endorse or give his own notes in its favor not exceeding $30,000 at any one time; and that, if the assets of the two late firms should prove insufficient to pay the debts of those firms, he would convey certain lands, to an amount which would indemnify against the deficiency. In consideration of the premises, Frame & Kimberly agreed to pay David Kimberly $1000 per annum for five years, or until he should be relieved from his endorsements and liabilities on their account. He was, in the mean time, to have free access to their books for the purpose of ascertaining the state of their business; and was to aid and assist in collecting the debts and settling the business of the late firms. They agreed to conduct their business with care and economy, and if not conducted in a mercantile and fair manner, David had a rigt to withhold his name from their paper.

There was nothing of consequence shown in the conduct of the parties incompatible with the professed relation in which they stood towards each other. The plaintiff's counsel admitted that no credit had been given by the plaintiff on account of supposing David to be a member of the firm, nor had the plaintiff any evidence to offer that he had ever held himself out as a member. In short there was nothing, so far, which tended to the inference that David Kimberly was a partner.

The firm was badly insolvent when it failed, and an inference was sought to be raised that the whole arrangement had been made between David and the firm with a view to pay the debts of the previous firms out of the business of the new; thus securing a profit or benefit to David, at the expense of the creditors of the new firm; that the assets of the previous firms were known to be deficient; and the new firm created with the design in its members and David to defraud its creditors, by appropriating their effects to the relief of David, in discharging the old claims.

Finally, the plaintiff's counsel offered directly to give evidence of a conspiracy to effect this fraudulent object,

which was overruled by the court below as inadmissible in an action of assumpsit on the note; and as applicable to an action on the case only for the deceit. The court below, holding also that the evidence relied on to establish a dormant partnership did not raise a question even for the jury, nonsuited the plaintiff.

I think they were right. It is now scarcely pretended that there was any evidence of a partnership independently of what was offered and rejected. This, I think, was a departure from the ground of action in the declaration. It was proposed to prove, not a partnership between the three, but a connection between the ostensible members only, with an understanding that they should turn the avails of their business into the hands of another for his benefit; a partnership between them to plunder their creditors for the benefit of a third person.

It is said that such proof, connected with the other evidence, would have made out a partnership among the three, or at least a case from which the jury might have infered one. Such an object was scarcely avowed; but if it had been, I see nothing in it which would tend to answer the object. The evidence proposed went to show a criminal conspiracy, a substantive fraud, whether this evidence be taken by itself or in connection with that which had preceded it; a partnership in guilt it is true; but nothing that would raise an implied assumpsit on the part of David Kimberly to pay the note. Judgment affirmed.